ABBOTT LABORATORIES, Appellant,

v.

Rick D. SMITH, Deceased; Barrett Smith, Administrator; Hon. Grant S. Roark, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2005–CA–002546–WC.

Court of Appeals of Kentucky.

July 28, 2006.

Walter E. Harding, Louisville, KY, for appellant.

Harry E. Budden, Jr., Paris, KY, for appellee, Barrett Smith.

Before JOHNSON and TAYLOR, Judges; HUDDLESTON,[1] Senior Judge.

## OPINION

JOHNSON, Judge.

Abbott Laboratories has appealed from the November 10, 2005, opinion of the Workers' Compensation Board which affirmed the Administrative Law Judge's

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

opinion and order concluding that Rick D. Smith died in a work-related motor vehicle accident, and that his wife, Barrett Smith, was entitled to death benefits and unpaid medical benefits under KRS[2] 342.750. Having concluded that the Board did not overlook or misconstrue controlling statutes or caselaw, or flagrantly err in assessing the evidence so as to cause gross injustice, we affirm.[3]

Because the Board succinctly set forth the facts of this case in its opinion, we quote them herein as our own:

Smith was an employee of Abbott, working for a subsidiary, Ross Products, as a pediatric product sales representative.[4] He was required to call on physicians, pediatricians, neonatologists, pediatric offices, and hospitals. As part of his employment, Smith was provided with a company vehicle, gas credit cards, cell phone, PDA, and laptop computer. He had no office other than an office located in his home in Mt. Sterling, Ky.

On the day of his death, May 28, 2004, Smith left his home at 6:30 a.m. to spend a day making calls in eastern Kentucky, and his last stop was in Pikeville. This was not his usual sales route, but he was covering for another employee. On his way home that evening, Smith called his wife, [Barrett] Smith,[5] and asked her to meet him at a restaurant en route. According to [Barrett], the restaurant was approximately fifteen miles from their home, or a thirty minute drive. This was the first time [Barrett] had met her husband on the road. She testified the

usual practice was for Smith to first come home and then go out to eat. [Barrett] stated Smith would have stopped to eat even if she had not gone to meet him. After dinner, Smith and [Barrett] left the restaurant in their respective vehicles and Smith was involved in a motor vehicle accident which resulted in [his] death.[6]

In addition to the testimony of [Barrett], the depositions of Barry Barnard ("Barnard"), chief financial officer for Abbott, and Susan Kramer ("Kramer"), Smith's immediate supervisor, appear in the record. The Abbott employees were questioned concerning Abbott's reimbursement and reporting policies. Barnard testified the company van furnished to Smith was used for both business and personal purposes. Work-related travel expenses were paid by Abbott, but personal use of the vehicle was [ ] reimbursed [by Smith]. Barnard explained that salesmen were required to report personal use of a vehicle, which was charged at a rate per mile plus a flat fee. Kramer was asked questions concerning what was considered business or personal use when stopping to eat dinner on the way home. She admitted there was a gray area, depending on how far the restaurant was from a salesman's home.

Both [Barrett] and Kramer were questioned concerning Smith's duties to report both expenses and business mat-

2. Kentucky Revised Statutes.

3. *See Western Baptist Hospital v. Kelly,* 827 S.W.2d 685, 687–88 (Ky.1992).

4. Smith had been employed by Abbott for 20 years.

5. The Worker's Compensation Board has misspelled her name "Barret;" however, we believe the correct spelling of her name is "Barrett," and will use this spelling throughout this Opinion.

6. Because Abbott refused to pay any medical expenses or Smith's funeral bill, Barrett filed an Application for Resolution of Injury Claim on November 12, 2004.

ters. Kramer testified Smith was provided with a company vehicle, gas credit card, cell phone, hand held computer device, and laptop computer, which he kept at his home. Kramer explained that sales representatives' weekly expense reports were due by noon on the following Monday. They could either be done daily or weekly. Business reports were submitted electronically. The daily reports were entered into the PDA, which were then downloaded to the laptop on a daily basis. [Barrett] testified her husband did his reimbursement expense reports on either Friday evening or Saturday morning.

Also introduced into the record were Abbott documents setting forth the duties and requirements of their sales people. One document titled District Expectations indicates sales people were required to perform administrative tasks at times other than 8:30 a.m. to 5:00 p.m., which was allotted for sales calls. Sales people were required to fuel their vehicles at the end of the day for the next day's travels. Sales information was synchronized, using a PDA, with the company's system on a daily basis.

The Administrative Law Judge issued his opinion and order on July 12, 2005, wherein he found that it was undisputed that Smith had been traveling all day on May 28, 2004, within the course of his employment, and that, Smith's accident and death occurred "after [Smith's] last sales call but before he reached home that evening." Based on all of the evidence of record, the ALJ found that at the time of the accident, Smith was within the course of his duties as a salesman for Abbott. The ALJ found that Smith's stopping to eat supper with his wife did not amount to a substantial deviation from his duties. The ALJ was further persuaded by the fact that Smith's only office was out of his home and that it was undisputed that Smith was required on a daily basis to enter sales reports into the company's computer after returning home from sales calls. Further, the ALJ gave great weight to Barrett's testimony that it was "normal custom" for Smith to enter this information in his computer each night, and that Smith was on his way to refuel the company vehicle at the time of the accident.

In reviewing Abbott's company policy, the ALJ found it significant that sales persons were required to perform administrative and planning tasks at times outside of the 8:30 a.m. to 5:00 p.m. period allotted for sales calls, that sales people were required to fuel company vehicles daily outside the period for sales calls, and that sales information was required to be entered and synced with the company's computer system daily. The ALJ also noted that the restaurant was on Smith's expected route home and stated that he found unpersuasive Abbott's contention that if Smith had not been killed it would have required him to reimburse it for the miles between the restaurant and his home. The ALJ did not find a substantial deviation from Smith's course of employment, as he regularly ate meals on the road and was expected to do so.[7] The ALJ also found unpersuasive Abbott's argument that Barrett's presence at the restaurant took Smith out of the course of his employ-

---

7. The ALJ rationalized, "[i]f stopping to eat supper rendered any subsequent travel upon return not work-related, then any such miles incurred after breakfast or lunch on the way to subsequent sales calls would also not be work-related." We also note that a company policy that would require an employee who stopped for supper while he was en route home to pay for personal mileage for the remainder of the trip home after he ate supper would have the illogical effect of financially rewarding the employer for waiting to eat his supper.

ment. The ALJ awarded workers' compensation death benefits under KRS 342.750, as well as any unpaid medical expenses associated with the accident.

Abbott appealed the ALJ's award on August 9, 2005.[8] In an opinion entered on November 10, 2005, the Board affirmed the ALJ's opinion stating that there was substantial evidence to support the ALJ's finding that "Smith was a traveling employee and had not abandoned his business purpose." This petition for review followed.

■ When reviewing one of the Board's decisions, this Court will only reverse the Board's decision when it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice.[9] To properly review the Board's decision, this Court must ultimately review the ALJ's underlying decision. Where the ALJ has found in favor of the party, who had the burden of proof, this Court must determine whether the ALJ's findings were supported by substantial evidence.[10] The Supreme Court of Kentucky has defined substantial evidence as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [people]" [citation omitted].[11] In other words, substantial evidence is, "evidence which would permit a fact-finder to reasonably find as it did." [12] And, as the fact-finder, the ALJ, not this Court and not the Board, has sole discretion to determine the quality, character, and substance of the evidence.[13] Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or to disbelieve any part of the evidence, regardless of its source.[14]

■ Under KRS 342.0011(1), "injury" is defined as "any work-related traumatic event ... arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." "[T]he language, 'in the course of ... employment', refers to the time, place, and circumstances of the accident, and the words, 'arising out of ... employment', relate to the cause or source of the accident." [15] The sole issue in this appeal is whether Smith was within the course of his employment when the car accident occurred following his stop for dinner.

Abbott argues that based on the "going and coming" rule that the ALJ erroneously found in favor of Smith because his injury and death did not arise out of and in the course of his employment. In *Recev-*

---

**8.** Barrett argues in her brief that pursuant to KRS 342.281 and *Halls Hardwood Floor Co. v. Stapleton,* 16 S.W.3d 327 (Ky.App.2000), Abbott has failed to properly preserve the issue raised herein by choosing not to file a Petition for Reconsideration with the ALJ. However, as Abbott points out in its brief its argument is not only that the ALJ's opinion was not based on substantial evidence of record, but also that it was the result of misconstruing applicable statutory and caselaw. Therefore, we conclude that the issue has been properly preserved for our review.

**9.** *Western Baptist,* 827 S.W.2d at 687–88.

**10.** *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986).

**11.** *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367, 369 (Ky.1971).

**12.** *Special Fund,* 708 S.W.2d at 643.

**13.** *Whittaker v. Rowland,* 998 S.W.2d 479, 481 (Ky.1999) (citing *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418, 419 (Ky.1985)).

**14.** *Id.* (citing *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.1977)).

**15.** *Masonic Widows & Orphans Home v. Lewis,* 330 S.W.2d 103, 104 (Ky.1959).

*eur Construction Co./Realm, Inc. v. Rogers,*[16] our Supreme Court stated:

> The general rule is that injuries sustained by workers when they are going to or returning from the place where they regularly perform the duties connected with their employment are not deemed to arise out of and in the course of the employment as the hazards ordinarily encountered in such journeys are not incident to the employer's business. However, this general rule is subject to several exceptions. For example, transitory activities of employees are covered if they are providing some service to the employer, *i.e.,* service to the employer exception [citations omitted].

In *Olsten–Kimberly Quality Care v. Parr,*[17] a nursing assistant for a home health care service provider was injured in a car accident on her way home after performing services for an in-home patient.[18] Based on the "service to the employer" exception, the Court held that even though the employer did not provide her with transportation, traveling was an "essential element" of the employment relationship, as driving to and from the patients' homes was a part of the nurse's job responsibilities and incident to the employer's business.[19]

▮ In this case, Smith was killed while returning to his home following dinner after a 12–hour work day. Abbott argues that since Smith was only approximately 15 miles from his home, he could have just as easily driven home and picked up Barrett before returning for dinner. Abbott claims that the stop for dinner was made as a convenience to Smith, not as a conven-ience to Abbott. However, the evidence was that Smith was following the route of another employee on that day, and the route he took home was directly in relation to where he stopped for dinner. In fact, Smith's manager testified that it was not unusual for a salesman to stop for dinner on the way home after making sales calls, and as such the stop was not personal, but was still part of the integral and necessary travel for the business. Thus, the evidence supports the ALJ's finding that regardless of whether Smith had eaten dinner alone or with his wife, his travel from the restaurant en route to his home was not a distinct departure from the normal course of the employer's business.[20] Since Smith had not returned home from the sales trip his travel continued to be "for the convenience of the employer as opposed to travel for the convenience of the employee" [citations omitted].[21]

Pursuant to established caselaw, Smith's stopping to eat dinner, whether or not accompanied by his wife, did not disrupt his status as a traveling employee. Thus, there was substantial evidence to support the ALJ's factual findings and the ALJ correctly applied the law to those facts.

For the foregoing reasons, the order of the Workers' Compensation Board is affirmed.

ALL CONCUR.

---

16.   958 S.W.2d 18, 20 (Ky.1997).

17.   965 S.W.2d 155, 157 (Ky.1998).

18.   *Id.* at 156.

19.   *Olsten–Kimberly,* 965 S.W.2d at 158.

20.   *Black v. Tichenor,* 396 S.W.2d 794, 797 (Ky.1965).

21.   *Receveur Construction,* 958 S.W.2d at 20.