RENDERED: NOVEMBER 10, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1495-WC

DREISBACH WHOLESALE
FLORISTS, INC.                                                                APPELLANT


                        PETITION FOR REVIEW OF A DECISION
v.                      OF THE WORKERS' COMPENSATION BOARD
                        ACTION NO. WC-17-94806


DONALD LEITNER; HONORABLE
DOUGLAS GOTT, CHIEF
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION                                          APPELLEES
BOARD


OPINION
REVERSING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

ACREE, JUDGE: Appellant, Dreisbach Wholesale Florists, Inc. (Dreisbach)

appeals the Workers' Compensation Board's (Board) November 19, 2021 opinion

reversing the Administrative Law Judge's (ALJ) denial of Appellee Donald

Leitner's motion to reopen his workers' compensation award. The Board

determined Leitner made a *prima facie* showing of mistake pursuant to KRS[1] 342.125(1)(c) as to claimed injuries to his neck. Finding error, we reverse.

## BACKGROUND

Leitner worked as a delivery driver for Dreisbach. While making a delivery on February 6, 2017, another vehicle crossed the center line and collided head-on with Leitner's delivery van. Leitner rode in an ambulance to the University of Louisville Hospital following the accident. He complained of pain in his neck, right shoulder, left knee, left ribs, and back. Hospital staff instructed him to follow up with his primary care physician.

Beginning the next day, February 7, 2017, Leitner made his first of several visits to BaptistWorx, a medical practice group in Louisville. BaptistWorx placed Leitner on work restrictions and referred him to Dr. Kuiper, an orthopedic specialist, for his left knee pathology. Dr. Kuiper operated on Leitner's left knee and prescribed physical therapy. Dr. Kuiper ultimately returned Leitner to work with no restrictions but observed Leitner had some residual pain in his knee.

Leitner filed an application for resolution of an injury claim on October 26, 2017. With his application, Leitner included a required medical history form wherein he stated he received treatment for his neck at University of Louisville Hospital, BaptistWorx, and Louisville Orthopedic Center. In a

---

[1] Kentucky Revised Statutes.

-2-

December 18, 2017 deposition, Leitner testified he saw his primary care physician for neck pain after the accident. He also testified to ongoing neck pain which prevented him from turning his head to the right.

Dr. David Waespe performed an independent medical evaluation of Leitner on December 30, 2017. He assessed Leitner as having one percent whole person impairment for his right shoulder injury, four percent for his left knee, and two percent for continued pain that limited his daily activities and ability to work. Overall, Dr. Waespe assessed Leitner as having seven percent whole person impairment and assigned Leitner work restrictions. He did not think Leitner could return to the sort of job he was performing previously due to his left knee and right shoulder impingement. He also observed that Leitner's neck was tender to the touch; however, despite his examination, Dr. Waespe did not find any impairment of Leitner's neck.

Dr. Gregory Gleis performed an independent medical evaluation of Leitner on February 7, 2018 and determined he had a four percent whole person impairment. Dr. Gleis determined that, although Leitner had subjective pain, there was no objective medical evidence of a residual injury. He determined Leitner's left knee had no deficiency in function, despite previous knee surgery. Leitner informed Dr. Gleis his neck pain was his primary concern, and that Leitner was previously referred to a specialist for degenerative disk disease, cervical radiculitis,

and neck pain. Dr. Gleis also reviewed a CT scan that revealed problems with Leitner's cervical vertebrae. Despite this, Dr. Gleis found no permanent worsening of a neck injury or condition and therefore did not recommend surgery on Leitner's neck; however, he did note in his report Leitner had constant right neck pain.

Leitner's injury claim was litigated at a final hearing. He testified to left knee soreness, to pain in his left lower extremity, and to constant right neck and shoulder pain.

ALJ Neal determined in his June 11, 2018 opinion and order that Leitner was only entitled to compensation for his medical expenses arising from injury sustained to his left knee and right shoulder. Though he acknowledged Leitner had ongoing neck pain and that Dr. Gleis found Leitner's neck conditions had not permanently worsened, he reached no conclusion in his order regarding Leitner's neck. There was no appeal to the full Board.

Leitner continued to have shoulder pain. Leitner underwent a cervical decompression and fusion operation on October 22, 2018, which was unsuccessful in resolving his pain. However, Leitner received another decompression procedure on his neck in July 2020, which relieved his shoulder pain. Leitner then obtained an expert opinion from Dr. Nazar, who opined that Dr. Waespe incorrectly determined Leitner had no impairment in his neck. In his report, Dr. Nazar stated his belief that Leitner's right shoulder pain was likely misdiagnosed, and that

Leitner's shoulder pain was likely pain resulting from his neck maladies. Dr. Nazar assessed a 29 percent whole person impairment for Leitner's neck and recommended permanent restrictions.

In April 2021, Leitner then filed his motion to reopen his workers' compensation claim. He argued that (1) he did not receive adequate consideration of his alleged neck injury from the original ALJ and (2) newly discovered evidence supported reopening. Leitner included Dr. Nazar's report in support of his motion.

ALJ Gott denied Leitner's motion in an order dated June 21, 2021. Therein, he determined Leitner could not reopen his claim on the basis of a neck injury that was "alleged, but not proven, awarded, or appealed." The ALJ held Leitner had not met his burden of proving his neck injury when originally seeking compensation for his injuries, and therefore was not entitled to "another bite at the apple[.]" And, the ALJ determined Dr. Nazar's report did not constitute newly discovered evidence, reasoning that just because the report was generated after his claim for his neck injury was denied does not mean the report's findings could not have been discovered by the exercise of due diligence prior to the hearing.

Leitner then filed both a petition for reconsideration and a motion to amend his motion to reopen. He sought to amend his motion and reopen his claim on the basis of (1) mistake and (2) a change of condition. ALJ Gott rejected both the petition and the motion on July 23, 2021. The ALJ determined Dr. Nazar's

report provided an insufficient basis to reopen Leitner's claim. Though Dr. Nazar believed Leitner's shoulder pain was attributable to a neck injury, the ALJ noted Leitner had listed neck injury in his original injury claim and that Dr. Gleis already evaluated Leitner's neck. The ALJ also determined Dr. Nazar's report did not support reopening for a change in condition. Because the June 11, 2018 order found Leitner was not entitled to compensation for any neck injury, any worsening of a neck injury could not support reopening his claim.

However, the Board issued an order on November 19, 2021, affirming in part and reversing in part the order denying Leitner's motion to reopen, and remanded the matter to ALJ Gott with instructions to sustain Leitner's motion. The Board determined Leitner's motion was not barred by *res judicata* because he had made a *prima facie* showing of mistake as to the finding that he had not sustained a compensable neck injury.

Dreisbach now appeals the Board's order, arguing the Board erred in determining Leitner's motion was not barred by *res judicata* on the basis of mistake.

### **STANDARD OF REVIEW**

KRS 342.285 designates the ALJ as the finder of fact in workers' compensation actions. KRS 342.285(2). "[A]s the fact-finder, the ALJ, not this Court and not the Board, has sole discretion to determine the quality, character,

and substance of the evidence." *Abbott Lab'ys v. Smith*, 205 S.W.3d 249, 253 (Ky. App. 2006) (citing *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999)). "Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or to disbelieve any part of the evidence, regardless of its source." *Id*. (citing *Whittaker*, 998 S.W.2d at 481).

"The [B]oard shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" KRS 342.285(2). Because the ALJ may disregard some evidence while believing other evidence, the Board may not disturb the ALJ's decisions if conflicting evidence underlies the ALJ's findings; when the Board reviews ALJs' decisions, it is tasked with deciding "whether the evidence is sufficient to support a particular finding made by the ALJ, or whether such evidence as there was before the ALJ should be viewed as uncontradicted and compelling a different result." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). The Board's review is limited to determining whether the ALJ acted within his or her powers, whether the result was procured by fraud, whether the result conforms with KRS Chapter 342, whether the result "is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record[,]" and whether the result "is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." KRS 342.285(2)(a)-(e).

-7-

"The scope of review by the Court of Appeals shall include all matters subject to review by the [B]oard and also errors of law arising before the [B]oard and made reviewable by the rules of the Supreme Court for review of decisions of an administrative agency." KRS 342.290. "When reviewing one of the Board's decisions, [the appellate] Court will only reverse the Board's decision when it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *Abbott Lab'ys*, 205 S.W.3d at 253 (citing *Western Baptist*, 827 S.W.2d at 687-88).

## ANALYSIS

"The doctrine of *res judicata* (also known as the doctrine of the finality of judgments) is basic to our legal system and stands for the principle that once the rights of the parties have been finally determined, litigation should end." *Slone v. R & S Mining, Inc.*, 74 S.W.3d 259, 261 (Ky. 2002). But, *res judicata* is not ironclad, and KRS 342.125 permits reopening final workers' compensation awards on grounds of fraud, newly discovered evidence which could not have been discovered upon the exercise of due diligence, mistake, or change of disability. KRS 342.125(1)(a)-(d). "Reopening is the remedy for addressing certain changes that occur or situations that come to light after benefits are awarded." *Dingo Coal Co. v. Tolliver*, 129 S.W.3d 367, 370 (Ky. 2004).

In its petition, Dreisbach contends the Board abused its discretion in reversing ALJ Gott's order denying Leitner's motion to reopen his award and believes ALJ Gott's opinion overruling Leitner's motion should be reinstated. Dreisbach notes that ALJ Neal considered conflicting evidence regarding Leitner's neck injury and found lacking the evidence presented in support of a compensable neck injury, but finding the evidence to the contrary conclusive of the issue. It therefore argues the Board failed to defer to ALJ Neal in his role as finder of fact by reopening the case to allow presentation of evidence discoverable before the hearing ALJ Neal conducted. We agree.

When an ALJ considers extensive, but conflicting, evidence regarding a workers' compensation claim in making his ruling upon a final hearing, a subsequent medical opinion that could have been obtained prior to the close of evidence will not justify reopening the case on the ground of "mistake" as contemplated by KRS 342.125(1)(c); *res judicata* still prevents reopening of an already final award. *Russellville Warehousing v. Bassham*, 237 S.W.3d 197, 202-03 (Ky. 2007). In other words, "the purpose of the 'mistake' provision is not to give the losing party an opportunity to 'bring up reinforcements' and relitigate the claim but rather to correct a decision that was the product of a misconception concerning the worker's actual condition." *Slone*, 74 S.W.3d at 262 (quoting *Messer v. Drees*, 382 S.W.2d 209, 213 (Ky. 1964)).

In *Russellville Warehousing v. Bassham*, a workers' compensation claimant was exposed to manganese dust for approximately seven years during his employment, which caused his health to deteriorate until he was unable to feed himself or move on his own. 237 S.W.3d at 198. When ruling on the claimant's application for benefits, the ALJ heard testimony from multiple doctors who had reached differing conclusions regarding what caused the claimant's condition – including diagnoses of Parkinson's disease, progressive ataxia resulting from acute manganese toxicity, and viral or prion diseases. *Id*. at 198-200. The ALJ determined the claimant suffered from a neurological disease resulting from occupational hazards posed by manganese exposure and awarded total disability. *Id*. at 200. The claimant then died, and an autopsy confirmed manganese poisoning as cause of death. *Id*. However, the employer's expert concluded "the autopsy data did not support a diagnosis of manganese toxicity and that pathologic examination indicated that Bassham appeared to have suffered from a slow virus." *Id*. at 201. On that basis, the employer moved to reopen the ALJ's decision and revoke all awards on the basis of newly discovered evidence or mistake. *Id*.

The Court in *Bassham* explained that "'newly discovered evidence' is a legal term of art. It refers to evidence that existed but that had not been discovered and with the exercise of due diligence could not have been discovered at the time a matter was decided." *Id.* The evidence offered in this case for

-10-

reopening does not satisfy that definition because Dr. Nazar's report could have been generated before the hearing. Dr. Nazar's report, as the Court in *Bassham* would denominate it, is "post-award evidence that the finding was mistaken" but such evidence "did not show a 'mistake' within the meaning of KRS 342.125." *Id.* at 203. The mistake provision of KRS 342.125(1)(c) "is not an invitation to retry a litigated claim and that litigation must end when a decision becomes final unless extraordinary circumstances exist[,]" said the Kentucky Supreme Court when it affirmed the ALJ's refusal to reopen the award. 237 S.W.3d at 202.

The Court further explained that, because the cause of Bassham's disability was "hotly contested" initially and because the parties offered extensive, but conflicting, evidence of the cause of his disability – including extensive evidence of prion or other disease – the ALJ did not err in finding there had been no *prima facie* showing of mistake sufficient to reopen the award. *Id.* As in *Bassham*, Leitner's neck injury was a hotly contested issue before ALJ Neal, with conflicting evidence presented for and against compensation. Leitner complained of neck pain to multiple doctors, and the ALJ considered the findings and testimony of those doctors. Dr. Waespe found no impairment in Leitner's neck. Dr. Gleis also made this finding, despite a scan which showed some degree of malady in Leitner's cervical spine. The ALJ also considered the fact Leitner complained of neck pain to his primary care physician after the accident, and

Leitner experienced pain when turning his head to the right. The ALJ considered these and other conflicting findings regarding Leitner's neck, but ultimately found Dr. Gleis' and Dr. Waespe's conclusions to be more convincing. The ALJ – not the Board – is tasked with assigning weight to evidence, and the Board therefore misapplied controlling law by assuming the ALJ's role.

Subsequent medical findings are insufficient to disturb an ALJ's findings regarding conflicting evidence, and thus Dr. Nazar's report did not provide a basis to usurp ALJ Neal in his role as fact finder. The Board misapplied controlling law in reaching the opposite conclusion.

Dr. Nazar's report does not suddenly make evidence of Leitner's claimed neck injury uncontradicted, and therefore the Board erred in determining the ALJ was compelled to reach a different result than he did. Our review reveals the Board misapplied controlling law by substituting its factual findings for those of the ALJ; the ALJ is empowered to believe or disbelieve evidence, not the Board. *Res judicata* saves Dreisbach from relitigating an issue already known and considered by the ALJ and, therefore, we must reverse the Board's order.

## CONCLUSION

For the foregoing reasons, we reverse the Board's November 19, 2021 opinion requiring the ALJ to reopen Leitner's award.

ALL CONCUR.

-12-

BRIEF FOR APPELLANT:                     BRIEF FOR APPELLEE:

Joel W. Aubrey                           Paul A. Brizendine
Michelle Enoch                           Jeffersonville, Indiana
Louisville, Kentucky