RENDERED:  MARCH 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0416-WC

MURRAY ENERGY                                                         APPELLANT

v.          PETITION FOR REVIEW OF A DECISION
OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-20-01685

DALTON RENFROW; HONORABLE
R. ROLAND CASE,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                                 APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

ACREE, JUDGE:  Appellant, Murray Energy, appeals the Workers' Compensation

Board's (Board) March 18, 2022, opinion affirming the Administrative Law

Judge's (ALJ) award to Appellee Dalton Renfrow.  Appellant challenges the ALJ's

determination that (1) Renfrow sustained compensable cumulative trauma to his

left shoulder and left knee arising from his former employment with Appellant, and (2) Renfrow is entitled to triple benefits for his inability to perform the kind of work he performed at the time of his injury. Finding no error, we affirm.

## BACKGROUND

Renfrow was born May 29, 1956; at the time this appeal was filed, Renfrow was 65 years old. Renfrow spent his working years performing manual labor, including factory work and water line installation. He worked for Appellant for nearly a decade, where he performed manual labor in an underground coal mine. His tasks included installing and changing belt lines, working with steel and concrete, and hauling batteries. The low ceilings of the mine often required him to bend over, and he would occasionally hit his head on the ceiling. He frequently had to lift items weighing as much as fifty pounds. Renfrow asserts that, on February 26, 2020, he experienced an acute injury to his right shoulder after lifting a battery lid while working in the mine. Renfrow worked for Appellant until he was laid off on February 27, 2020 – one day after his alleged acute injury.

On November 30, 2020, Renfrow filed a claim for cumulative work-related injuries to his neck, shoulders, and right knee, a claim for acute injury to his right shoulder, and a claim for hearing loss. The ALJ consolidated the three claims. Renfrow filed a motion to amend on May 14, 2021 to add a claim for

injury to his left knee resulting from cumulative work-related trauma. The ALJ granted the motion on May 17, 2021.

The ALJ considered a variety of evidence when evaluating Renfrow's claims. Several doctors and other medical professionals evaluated Renfrow. A doctor and a specialist in hearing instruments both noted some hearing loss, but the doctor ultimately determined Renfrow was not impaired by his hearing loss and recommended a hearing aid. As to Renfrow's acute injury to his right shoulder, medical records from Ohio County Family Care contained x-ray images; the images indicated prior rotator cuff surgery, prior dislocation, and mild degenerative changes to his shoulder.

As to his cumulative trauma, the ALJ considered evidence from six doctors. In notes dated July 24, 2014, Dr. William Martin noted Renfrow was doing well after a rotator cuff surgery and opined that the injury which resulted in his rotator cuff did not arise during the course of his employment. In records dated March 2, 2021, Dr. Steven Mills diagnosed left knee pain and hypertension, and noted swelling in the left knee; Dr. Mills noted Renfrow's left knee pain had gotten so bad that he needed to walk with crutches. Dr. Mills gave him an injection in his knee and instructed him to perform exercises. Dr. Craig Lundquist examined x-rays of Renfrow's lumbar spine taken in 2008, and opined that the x-rays indicated early signs of degeneration. In a report dated May 7, 2020, Dr. James Rushing

stated his opinion that Renfrow's problems with his shoulders, neck, and right knee were at least partially caused by working in the coal industry, and that continuing to work in the field would exacerbate these problems. Dr. Rushing diagnosed Renfrow with cervical osteoarthritis and degenerative joint disease, degenerative joint disease in his right knee, osteoarthritis in his right shoulder, and degenerative joint disease and osteoarthritis in his left shoulder.

In an April 15, 2021 report, Dr. James Farrage diagnosed Renfrow with increased pain, restricted range of motion, decreased strength, and impaired functional capacity in Renfrow's right shoulder. He also noted cumulative trauma to Renfrow's cervical spine, left shoulder, and both knees. Dr. Farrage believed these diagnoses have resulted in accelerated degeneration of Renfrow's spine, shoulders, and knees, as well as accompanying chronic pain, restricted range of motion, reduced endurance and impaired functional capacity. Dr. Farrage recommended Renfrow avoid bending, stooping, or extreme cervical rotation, that he avoid activity above shoulder level, and that he avoid ladders and working from unprotected heights. Dr. Farrage assessed a sixteen percent whole person impairment resulting from cumulative trauma; he believed Renfrow experienced six percent impairment for his left shoulder, five percent for his neck, two percent for his right knee, and three percent for his left knee. He also assessed three percent impairment due to acute injury to Renfrow's right shoulder. Importantly,

Dr. Farrage included in his report his opinion that "[i]t is within a reasonable degree of medical probability that the aggregate work activities were the major (greater than 50%) contributor to the current burden of the physical impairment for the identified diagnoses in the individual."

However, Dr. Thomas O'Brien, an orthopedic specialist, stated in his February 26, 2021 report that he did not believe Renfrow experienced an acute injury to his right shoulder on February 26, 2020 at all. Rather, he believed Renfrow's shoulder pain was a result of a combination of age-related degenerative arthritis, degenerative shoulder impingement, and past shoulder surgery. He believed Renfrow did not experience cumulative trauma to the neck, shoulders, back, or knee from his employment, opining rather that these conditions are normal, age-related pains unrelated to any workplace injuries. He noted that Renfrow was able to go turkey hunting in May of 2020 and was able to perform his job until the day he was terminated, despite Renfrow reporting he was in severe pain. He noted no sign of cervical radiculopathy. He believed Renfrow did not need surgery for his neck and that Renfrow does not require physical therapy or prescription medication. Dr. O'Brien assessed zero percent impairment in Renfrow's cervical spine, six percent impairment in his right shoulder which was preexisting and not work related, and two percent impairment in his right knee

which was preexisting and not work related. Dr. O'Brien believed Renfrow was able to work without restrictions.

The ALJ also considered testimony from Renfrow himself, both from a deposition and from the hearing on Renfrow's claims. He testified as to the physical difficulty of his work. He often had to turn his head to avoid hitting it on the ceiling of the mine, and occasionally struck his head on the ceiling. He stated he did not have pain in his neck or receive medical treatment for his neck at the time of his testimony, though he did have some stiffness. He had a prescription for muscle relaxers for his shoulders and knees, and received cortisone injections in both of his knees. He had serious difficulty lifting his left arm due to left shoulder and left knee pain. Renfrow stated his belief that he would not be able to perform the job he had at the time Appellant terminated him.

The ALJ entered his Award and Order on October 28, 2021. Relying on Dr. O'Brien's conclusions, the ALJ dismissed Renfrow's claims as to his cervical spine, right shoulder, and right knee. The ALJ also dismissed Renfrow's claim for income benefits for his hearing loss, determining Renfrow's hearing loss fell below the KRS[1] 342.7305(2) eight percent threshold; however, the ALJ did determine Renfrow was entitled to "reasonable and necessary medical expenses" arising from his occupational hearing loss. The ALJ also determined Renfrow was

---

[1] Kentucky Revised Statutes.

not entitled to temporary total disability under KRS 342.001(11)(a) because nothing indicated Renfrow would not have been able to continue working had he not been laid off. He determined Renfrow was not totally disabled under KRS 342.730, and, persuaded by Dr. O'Brien's findings, dismissed Renfrow's claim for an acute injury.

However, the ALJ determined Renfrow was permanently and partially disabled due to cumulative trauma to his left knee and left shoulder, finding Dr. Farrage's opinion to be persuasive. The ALJ determined Renfrow suffered from nine percent impairment – three percent for his left knee and six percent for his left shoulder – which he reduced to 7.65 percent upon application of KRS 342.730(1)(b).

Because Renfrow did not return to work and because he lacked the physical capacity to return to the sort of work he performed at the time of injury, the ALJ determined he was entitled to three times the amount of disability benefits in accordance with KRS 342.730(1)(c)1. The ALJ increased the multiplier by an additional six-tenths because Renfrow was sixty years old or older in accordance with KRS 342.730(1)(c)3. And, because KRS 342.020 requires defendant-employers to pay "for the cure and relief from the effects of an injury or occupational disease[,]" KRS 342.020(1), the ALJ determined Renfrow was

entitled to medical benefits for his occupational hearing loss, left knee injury, and left shoulder injury.

In an opinion entered March 18, 2022, the Board affirmed the ALJ's award to Renfrow, concluding the ALJ did not abuse his discretion. Appellant now appeals, challenging the ALJ's determinations that (1) Renfrow suffered compensable cumulative trauma to his left knee and left shoulder, and (2) Renfrow is unable to perform the kind of work he performed at the time of his injuries and therefore was entitled to tripling of his benefits.

## ANALYSIS

KRS 342.285 designates the ALJ as the finder of fact in workers' compensation actions. KRS 342.285(2). "[A]s the fact-finder, the ALJ, not this Court and not the Board, has sole discretion to determine the quality, character, and substance of the evidence." *Abbott Labs. v. Smith*, 205 S.W.3d 249, 253 (Ky. App. 2006) (citing *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999)). "Not only does the ALJ weigh the evidence, but the ALJ may also choose to believe or to disbelieve any part of the evidence, regardless of its source." *Id*. (citing *Whitaker*, 998 S.W.2d at 481).

"The [B]oard shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." KRS 342.285(2). Because the ALJ may disregard some evidence while believing other evidence, the Board may

not disturb the ALJ's decisions if conflicting evidence underlies the ALJ's findings; when the Board reviews ALJs' decisions, it is tasked with deciding "whether the evidence is sufficient to support a particular finding made by the ALJ, or whether such evidence as there was before the ALJ should be viewed as uncontradicted and compelling a different result." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). The Board's review is limited to determining whether the ALJ acted within his or her powers, whether the result was procured by fraud, whether the result conforms with KRS Chapter 342, whether the result "is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record[,]" and whether the result "is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." KRS 342.285(2)(a)-(e).

"The scope of review by the Court of Appeals shall include all matters subject to review by the [B]oard and also errors of law arising before the [B]oard and made reviewable by the rules of the Supreme Court for review of decisions of an administrative agency." KRS 342.290. "When reviewing one of the Board's decisions, [the appellate] Court will only reverse the Board's decision when it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice." *Abbott Labs.*, 205 S.W.3d at 253 (citing *Western Baptist*, 827 S.W.2d at 687-88). And, where an award "is

supported by substantial evidence, it may not be disturbed." *Beth-Elkhorn Corp. v. Dotson*, 428 S.W.2d 32, 34 (Ky. 1968); *see also Emps.' Liability Assurance Corp. v. Gardner*, 204 Ky. 216, 263 S.W. 743, 744 (1924) ("Unless there is an entire absence of substantial and credible evidence to support the board's finding of facts, this court, in the absence of fraud, cannot disturb it.").

Not only may an ALJ find items of evidence persuasive and disregard conflicting evidence, he may draw inferences from the evidence before him. *Miller v. East Kentucky Beverage/Pepsico, Inc.*, 951 S.W.2d 329, 331 (Ky. 1997). In *Miller*, a workers' compensation claimant hurt his back while at work; the injury herniated a disc in his back, which contributed to a degenerative lumbar disc disease. *Id*. at 330. The ALJ determined the claimant had a 28 percent permanent partial occupational disability, which the Board and this Court affirmed. *Id*. Though the claimant asserted that "overwhelming evidence" showed he was disabled to a greater extent than the ALJ had determined, the Kentucky Supreme Court noted the ALJ "has the sole authority to judge the weight, credibility and inferences to be drawn from the record." *Id*. at 331 (citing *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985)). The Kentucky Supreme Court affirmed, determining the ALJ had properly exercised his discretion in reviewing the evidence and that substantial evidence underpinned the ALJ's decision. *Id*.

-10-

It is true that conflicting evidence was before the ALJ in the present case. Dr. O'Brien, an orthopedist, did not believe Renfrow's employment caused him cumulative trauma to his knees or shoulders, and that any cumulative injury was not work related. In fact, the ALJ relied upon Dr. O'Brien to determine Renfrow suffered no work-related acute injury or cumulative trauma to any areas other than the left knee and left shoulder.

By contrast, Dr. Farrage detected cumulative trauma in several parts of Renfrow's body, including his left knee and left shoulder. Dr. Farrage determined Renfrow's work was the main cause of his physical impairment for each diagnosis. While the ALJ did not determine Renfrow suffered cumulative trauma to any of the areas Dr. Farrage identified other than the left knee and left shoulder, other items of evidence were presented to the ALJ pertaining to the left knee and shoulder. Dr. Mills diagnosed Renfrow with left knee pain and noted it had advanced to the point Renfrow needed crutches to walk. X-ray records from Ohio County Family Care showed shoulder degeneration. Dr. Rushing diagnosed Renfrow with degenerative joint disease and osteoarthritis in his left shoulder, among other diagnoses; he opined that Renfrow's work in the coal industry was at least the partial cause of his injuries. The ALJ specifically noted his belief that Renfrow was a credible witness, and that he testified he has problems in his left knee and left shoulder which require pain medication and regular visits to Dr.

Mills. Even if the ALJ only relied on the findings of Dr. Farrage, the ALJ, as factfinder, is tasked with weighing evidence; he may be persuaded by some evidence while being unpersuaded by other evidence. Thus, it was not error for the ALJ to determine Renfrow suffered from work related cumulative trauma to his left knee and left shoulder, as substantial evidence of record supports this conclusion.

Appellant also challenges the tripling of Renfrow's benefits because, due to his injury, he lacked the physical capacity to perform the type of work he performed at the time of his injury pursuant to KRS 342.730(1)(c)1. Again, though conflicting evidence exists on this point, substantial evidence supports the ALJ's application of the multiplier. On one hand, Dr. O'Brien opined that, because Renfrow was able to turkey hunt and because he was able to work until he was laid off, Renfrow was not injured to the point he did not retain the physical capacity to perform the kind of work he used to perform. On the other hand, Dr. Farrage recommended that Renfrow not repetitively bend, stoop, or bend his neck excessively. Dr. Mills noted Renfrow's left knee deteriorated to the point he needed crutches to walk. Renfrow requires injections in his knees. On the basis of Renfrow's testimony and the findings of Dr. Mills and Dr. Farrage, the ALJ determined Renfrow lacked the capacity to return to the kind of work he used to perform. Again, because the ALJ is charged with weighing evidence and because

we do not reweigh evidence on appeal, we find no error in the ALJ's application of the statutory multiplier.

## **CONCLUSION**

For the foregoing reasons, we affirm the ALJ's October 28, 2021, Award and Order.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald J. Niehaus
Caleb T. Taylor
Lexington, Kentucky

BRIEF FOR APPELLEE DALTON RENFROW:

McKinnley Morgan
Gerald Vanover
London, Kentucky