RENDERED:  MAY 26, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1392-WC

KEMI                                                                    APPELLANT


v.            PETITION FOR REVIEW OF A DECISION
              OF THE WORKERS' COMPENSATION BOARD
              ACTION NOS. WC-20-01293, WC-20-01296, WC-20-01373,
              AND WC-20-01449


LEWIS HICKS; SOUTHEASTERN LAND LLC;
HONORABLE THOMAS POLITES,
ADMINISTRATIVE LAW JUDGE; UNINSURED
EMPLOYERS' FUND; AND WORKERS'
COMPENSATION BOARD                                           APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE:  KEMI, Kentucky Employers' Mutual Insurance, appeals the

decision of the Workers' Compensation Board (the "Board") affirming an

Administrative Law Judge's ("ALJ") Opinion and Order granting extraterritorial

jurisdiction to Lewis Hicks' workers' compensation claim.  Because we believe the

ALJ and Board misconstrued Kentucky's extraterritorial statute, we reverse the Board's decision and remand to the ALJ for findings consistent with such law and this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

Lewis Hicks ("Hicks") began working for Southeastern Land, LLC ("Southeastern") in 1996. Southeastern owned several coal mines in Kentucky and one mine – the "Alma" Mine – in Williamson, West Virginia. Additionally, Southeastern's headquarters were in Debord, Kentucky.

Hicks' primary work location during his first 20 years of employment with Southeastern was the "Eagle" Mine in Kentucky. However, in August 2017, Southeastern's management moved Hicks to the Alma Mine in West Virginia. Hicks worked approximately sixty (60) hours a week at the Alma location as a foreman overseeing a new type of mining process. While at the Alma Mine, Hicks worked approximately six (6) days a week, sixty (60) hours per week. He performed pre- and post-shift inspections as an underground foreman and prepared paperwork for the West Virginia authorities. Additionally, Southeastern supplied Hicks with his own office trailer at the Alma Mine.

While working at the Alma location, Hicks continued living in Kentucky and drove daily to work in West Virginia. He testified that Southeastern's management told him the transfer was temporary and he would

eventually be allowed to return to work in Kentucky. Additionally, Hicks remained in contact with the supervisor of the Kentucky mines. Moreover, while working in West Virginia, Hicks went to Southeastern's Kentucky office in Debord for insurance issues, to drop off and pick up equipment, and to meet with the human resources supervisor and other people in Southeastern's management. He also stated he went to the mine supply store and safety office in Kentucky to drop off or pick up items.

Hicks was also part of Southeastern's mine rescue team, which he trained for in Warfield, Kentucky. In addition, he visited each Southeastern mine in Kentucky as part of his mine rescue training. Hicks also entered the mines in Pike and Perry Counties on a "regular basis" for familiarization.

On January 10, 2019, while at the Alma Mine, Hicks noticed a miner cable hung across the belt line and attempted to take it down. Unfortunately, a splice in the conveyor belt caught his jacket and pulled him down the beltline, causing injuries to his right arm and shoulder. Hicks did not work after his injury.

Hicks filed a workers' compensation claim in Kentucky on September 23, 2020, alleging acute right shoulder and neck injuries occurring at work from the January 10, 2019, accident. He also filed a hearing loss claim. He later filed two additional claims, one alleging injuries to multiple body parts caused by cumulative trauma and a coal workers' pneumoconiosis ("CWP") claim.

The ALJ ultimately determined that, although Hicks had suffered the injury in West Virginia, Kentucky had extraterritorial jurisdiction over Hicks' claim under Kentucky Revised Statute ("KRS") 342.670(1). Additionally, the ALJ awarded Hicks temporary total disability benefits ("TTD"), permanent partial disability ("PPD") benefits, and medical benefits for the injuries to his back and shoulders. Additionally, the ALJ dismissed Hicks' CWP claim and awarded only medical benefits for Hicks' occupational hearing loss claim.

Southeastern filed a Petition for Reconsideration, arguing the ALJ erred in concluding Hicks' employment was "principally localized" in Kentucky at the time of his injuries under KRS 342.670(1)(a). The ALJ overruled the Petition for Reconsideration by Order on June 10, 2022. KEMI then filed an appeal of the ALJ's decision with the Board. The Board affirmed the ALJ, determining that the evidence did "not compel a different result." This appeal followed.

## ANALYSIS

### a. Standard of Review

Our Supreme Court has explained that the "standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact." *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 270 (Ky. 2018). As to questions of fact, "the ALJ, not this Court and not the Board, has sole discretion to determine the quality, character, and substance of the

-4-

evidence." *Abbott Laboratories v. Smith*, 205 S.W.3d 249, 253 (Ky. App. 2006) (citations omitted). Indeed, "[w]here the ALJ has found in favor of the party, who had the burden of proof, this Court must determine whether the ALJ's findings were supported by substantial evidence." *Id.* (citation omitted). "Substantial evidence" is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Smyzer v. B.F. Goodrich Chemical Co.*, 474 S.W.2d 367, 369 (Ky. 1971) (citation omitted).

However, "we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*." *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009) (citations omitted). Jurisdiction is a question of law, and our review of the ALJ's ruling as to jurisdiction is *de novo*. *Appalachian Regional Healthcare, Inc. v. Coleman*, 239 S.W.3d 49, 53-54 (Ky. 2007) (citations omitted) ("The question of jurisdiction is ordinarily one of law, meaning that the standard of review to be applied is *de novo*.").

### b. Discussion

The sole question in this appeal is whether Kentucky's jurisdiction extended to Hicks' workers' compensation claims through the extraterritorial jurisdiction statute. The applicable provisions of the statute – KRS 342.670(1) – provide:

(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which the employee . . . would have been entitled to the benefits provided by this chapter had that injury occurred within this state, that employee . . . shall be entitled to the benefits provided by this chapter, if *at the time of the injury*:

> (a) His or her *employment is principally localized in this state*; or

> (b) He or she is working under a contract of hire made in this state *in employment not principally localized in any state*[.]

(Emphasis added.)

Additionally, the definition of "principally localized" under KRS 342.670(5)(d) is as follows:

1. His or her employer has a place of business in this or the other state and he or she *regularly works at or from that place of business*, or

2. *If subparagraph 1. foregoing is not applicable*, he or she is domiciled and spends a substantial part of his or her working time in the service of his or her employer in this or the other state[.]

(Emphasis added.)  Thus, the dispute in this matter involves whether Hicks' employment was "principally localized" in Kentucky or West Virginia.

Therefore, for Kentucky to be the "principal location" under the statute, Southeastern must have a place of business in Kentucky, and Hicks must regularly work at or from that place of business in Kentucky at the time of the

injury. KRS 342.670(1) and KRS 342.670(5)(d)1. Alternatively, for West Virginia to be the "principal location" under the statute, Southeastern must have a place of business in West Virginia, and Hicks must regularly work at or from that place of business in West Virginia at the time of the injury. *Id.*

After discussing KRS 342.670, the ALJ determined that KRS 342.670(1)(a) applied in this situation and that jurisdiction was appropriate under Kentucky law. Specifically, the ALJ determined that Southeastern had a place of business in Kentucky – its business headquarters in Debord – and that Hicks "regularly works at or from that place of business, having done so for approximately 20 of the last 23 years, until the temporary transfer or loan to West Virginia." Similarly, while noting that whether Hicks had worked in Kentucky in the past was not dispositive, the Board again found compelling Hicks' testimony that his work in West Virginia was temporary in upholding the ALJ's decision.

As an initial matter, under Kentucky law, whether employment is "principally localized" in one jurisdiction or another depends on the employee's work status at the time of injury, not the location where the employee may have worked at previous points in his or her career. *Amax Coal Co. v. Smith*, 748 S.W.2d 158, 160 (Ky. App. 1988). In *Smith*, Smith was a coal miner who filed a workers' compensation claim in Kentucky. *Id.* at 159. He had worked for ten

years in Kentucky for Amax and the final four years of his career at Amax's mine in Indiana. *Id*. at 160.

The Court of Appeals began by noting that the Board's decision "was based on the fact that Smith spent a substantial part of his working history for his employer in Kentucky. For this reason, it determined that his employment was principally localized in Kentucky." *Id*. However, the Court of Appeals disagreed with the Board's conclusion, stating that "the language of the statutes is expressed in the present tense. KRS 342.670(1) refers to the nature and location and the work 'at the time of such injury.'" *Id*. As further discussed by the Court, "[w]e are concerned with where he was at the time of the injury. His employment is principally localized where he spends a substantial part of his working time in the service of his employer in this state. The key word is 'spends.' It does not read 'spent' or 'did spend.'" *Id*. Accordingly, the Court concluded Smith's employment was principally localized in Indiana under the statute. *Id*.

Thus, in this case, Hicks' date of injury for both the traumatic and cumulative trauma injuries was January 10, 2019. Further, no dispute exists that, at that time, he was working at the Alma Mine in West Virginia.

The facts in *Eck Miller Transportation Corporation v. Wagers*, 833 S.W.2d 854 (Ky. App. 1992), are analogous to the facts presented in the record of this case. In *Wagers*, a truck driver who happened to be a Kentucky resident

worked for an employer doing business in both Kentucky and Tennessee. *Id.* at 855. The truck driver was responsible for "substantial" work-related tasks like completing paperwork and vehicle maintenance at his home in Kentucky. *Id.* However, his employer ultimately assigned him to the Chattanooga, Tennessee terminal, where he worked for a year and a half and received most of his work orders. *Id.* He subsequently sustained a work injury in Tennessee. *Id.* The Court, with all concurring, reinstated the ALJ's original Order that found that the truck driver worked from Tennessee for the statutory purposes of determining the jurisdiction of a workers' compensation claim. *Id.* at 856.

As in *Wagers*, while Hicks' employment for Southeastern required him to complete some work-related tasks in Kentucky, these tasks were not more "substantial" than the paperwork and vehicle maintenance the truck driver in *Wagers* performed while at home in Kentucky. Furthermore, both Hicks and the truck driver sustained injuries outside of Kentucky after working primarily in another state for an extended period. The analogous set of facts presented by *Wagers* and Hicks' employment favors a finding of principally localized employment in West Virginia.

Hicks also asserts that he spent a "substantial part" of his working time in Kentucky while similarly being domiciled in Kentucky. However, this is irrelevant. In this case, Hicks' employment was principally localized either in

Kentucky or West Virginia. If either state was the principal location, by its very terms Section (d)(1) of the statute applies. Moreover, if Section (d)(l) is applicable, then the condition precedent for Section (d)(2) cannot be met; thus, Section (d)(2) cannot be utilized as an alternative means by which to establish Kentucky jurisdiction.

Thus, the record shows that Southeastern Land owned or leased a mine in West Virginia, and Hicks was regularly required to work at or from the mine in West Virginia. Hicks worked at the Alma Mine in West Virginia at the time of injury and last injurious exposure. Hicks worked in West Virginia for seventeen (17) months, maintaining his own office space. Hicks would spend six (6) days a week, sixty (60) hours a week, at the mine in West Virginia. While Hicks may have made occasional trips to Southeastern's headquarters or other mines in Kentucky, Hicks spent nearly all his work time at the West Virginia location at the time he sustained his injuries. Hicks' belief as to whether his time at the West Virginia mine was temporary or permanent has no bearing on where his employment was "principally localized" under the statutory definition. See KRS 342.670(5)(d)(1).

Therefore, Hicks' employment was principally localized in West Virginia, which is the appropriate jurisdiction to pursue his workers' compensation

remedies.  Thus, we remand this claim to the ALJ for findings consistent with KRS 342.650(1) that Hicks' employment was principally localized in West Virginia.

ALL CONCUR.

BRIEF FOR APPELLANT:

Johanna F. Ellison
Lexington, Kentucky

BRIEF FOR APPELLEE LEWIS
HICKS:

McKinnley Morgan
Gerald Vanover
London, Kentucky

BRIEF FOR APPELLEE
SOUTHEASTERN:

Brandon L. Rosen
R. Tyler Hurst
Huntington, West Virginia

BRIEF FOR APPELLEE
UNINSURED EMPLOYERS' FUND:

James R. Carpenter
Assistant Attorney General
Frankfort, Kentucky