COAL DUST COAL COMPANY,
Appellant,

v.

Denver STILTNER; Vicki G. Newberg, Acting Director of Special Fund; Special Fund; Workers' Compensation Board; and Irene Steen, Administrative Law Judge, Appellees.

William O. WINDCHY, Acting Director of Special Fund, Appellant,

v.

Denver STILTNER; Coal Dust Coal Company; Irene Steen and Workers' Compensation Board, Appellees.

Nos. 95–SC–137–WC, 95–SC–196–WC.

Supreme Court of Kentucky.

June 8, 1995.

Case Ordered Published by Supreme Court Aug. 24, 1995.

John V. Porter, Paintsville, for Coal Dust Coal Company.

Angeline B. Golden, Labor Cabinet—Special Fund, Louisville, for William Windchy.

Kelsy E. Friend, Robert J. Greene, Pikeville, for Denver Stiltner.

OPINION OF THE COURT

This Workers' Compensation appeal presents the single issue of whether the last Kentucky employer may be liable for payment of occupational-disease benefits to a coal miner who, after termination of his last employment in this state, was found to have pneumoconiosis, and thereafter worked as a miner in another state for an employer in that state. The Administrative Law Judge awarded benefits pursuant to KRS 342.732(1)(b) and KRS 342.316. The Workers' Compensation Board and the Court of Appeals affirmed. We consolidated Coal Dust's and the Special Fund's separate appeals, and now affirm.

Stiltner was employed as an underground miner by various companies in Kentucky and Virginia for more than 30 years. His stints in Kentucky were from 1960 to 1973 and from 1980 to 1989. His last injurious exposure to coal dust in this state was in March, 1989, when he left the employ of Coal Dust. Stiltner then applied for work in Virginia. A pre-employment physical examination produced a diagnosis of category 1 pneumoconiosis. Consequently, as permitted by Virginia law, Stiltner was required to waive occupational-disease coverage as a condition of hire. He worked at the Virginia mine from April, 1989, to September, 1990.

In December, 1990, Stiltner notified Coal Dust of his potential claim for benefits. Timely notice has been stipulated by the employer, and is no longer in issue. Stiltner filed his claim in November, 1991. Coal Dust contested the presence of the disease, and denied liability in any event on grounds that Stiltner's last hazardous exposure had occurred during his term with the Virginia employer.

■ Based on sufficient medical evidence, the ALJ found that Stiltner suffered from category 1 pneumoconiosis and respiratory impairment resulting in pulmonary capacity of 55–80% of predicted normal. Considering the results of the 1989 pre-employment examination, and the testimony of Stiltner's physicians, all of whom were of the opinion that his condition dated back to the time of his last employment in Kentucky, the ALJ concluded that Coal Dust was liable for benefits, with 75% apportioned to the Special Fund in accordance with KRS 342.316(10)(a). The date of actual disability was determined to be the same date as Stiltner's last exposure in Virginia. (Without expressly finding that the employment in Virginia entailed "injurious exposure," the ALJ acknowledged it "can be said" that Stiltner's final 17 months of exposure there would be sufficient to produce the disease.) The Board and the Court of Appeals agreed that Stiltner was eligible for compensation for that disability existing at the time of his last exposure in Kentucky, the subsequent exposure in Virginia notwithstanding. Coal Dust and the Special Fund argue to the contrary.

KRS 342.316(1)(a) provides, in part:

The employer liable for compensation for occupational disease shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease.

Similar language appears in KRS 342.316(10)(a). The appellants' contention, in a nutshell, is that the Virginia company, and not Coal Dust, was the employer in whose employment Stiltner was last exposed to the hazard.

We begin by observing that KRS 342.316(1)(a) identifies the "employer liable for compensation." KRS 342.0011(14) defines "compensation" to mean payments "made under the provisions of this chapter...." We do not believe the General Assembly presumed to impose liability under our Workers' Compensation Act upon employers beyond its jurisdiction. By logical necessity, KRS 342.316(1)(a) applies to employers subject to the Act; from among those, if the claim is otherwise valid, it imposes liability upon that employer in whose service the claimant was last exposed to the hazard—in this case, Coal Dust. There is no evidence or argument to indicate extraterritorial jurisdiction to impose liability upon the Virginia employer.

It is not KRS 342.316(1)(a), but KRS 342.316(3)(b), which insulates Kentucky employers from pneumoconiosis claims grounded on less-than-substantial exposure in this state. Benefits are not payable

unless the employee has been exposed to the hazards of such pneumoconiosis in the Commonwealth of Kentucky over a continuous period of not less than two (2) years during the ten (10) years immediately preceding the date of his last exposure to such hazard, or for any five (5) of the fifteen (15) years immediately preceding the date of such last exposure.

Unlike the reference in KRS 342.316(1)(a), "last exposure" in this subsection does not appear necessarily to mean last exposure with an employer subject to Kentucky jurisdiction, as opposed to absolute last exposure. That question we need not and do not decide; either way, Stiltner's periods of employment in Kentucky indisputably satisfy the conditions of KRS 342.316(3)(b).

■ Although finding it "apropos of nothing," Coal Dust and the Special Fund accept as "self-evident" the principle that a pneumoconiosis claim arises

the moment the disease is discovered and the employee has terminated his employment, and the claim may proceed to an award for such disability as then existed,

even though the employee subsequently is re-employed as a miner.

*Yocom v. Ratliff*, Ky.App., 574 S.W.2d 339, 342 (1978). *Cf. Yocom v. Karst*, Ky., 528 S.W.2d 697 (1975). The more recent authority of KRS 342.732(1)(b), effective since 1987, creates an irrebutable presumption of 75% occupational disability for an employee having the radiographic classification and respiratory impairment which, according to findings not challenged here, Stiltner had when he departed from Coal Dust in 1989. The award compensates for the disability found to have existed at that time.

The appellants insist the result below is contrary to the decision in *Amax Coal Co. v. Smith*, Ky.App., 748 S.W.2d 158 (1988). Amax conducted mining operations in Indiana and Kentucky. Smith began work in 1968 in an Indiana mine, in 1969 was transferred to a Kentucky mine, and in 1979 was re-assigned to Indiana, where he ended his mining career in 1983. The issue was whether Kentucky had jurisdiction to award disability benefits pursuant to the extraterritorial-coverage provisions of KRS 342.670. As Smith's contract of hire had not been made in Kentucky, and his employment was not principally localized here, the Court of Appeals held the statute not to apply, and concluded that Smith must bring his claim in Indiana.

First, we observe that the instant case presents no issue concerning KRS 342.670. Secondly, there was no question that Amax was Smith's last employer for purposes of the Act, hence no issue regarding whether KRS 342.316(1)(a) provides the defense which Coal Dust now asserts. Finally, from all that appears, Smith had no evidence that he suffered from pneumoconiosis at the conclusion of his last tour in Kentucky. By invoking KRS 342.670, Smith acknowledged that his injury was incurred *"outside* the territorial limits of this state" (KRS 342.670(1), emphasis added), rendering the case telescopically remote from ours, where Stiltner was awarded benefits for disability proven to have existed at the time he left Coal Dust's employ.

We conclude the award was consistent with Kentucky law, and affirm.

All sitting.

All concur.