RENDERED: NOVEMBER 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0552-WC

KENTUCKY EMPLOYERS'
MUTUAL INSURANCE                                        APPELLANT


                       PETITION FOR REVIEW OF A DECISION
v.                     OF THE WORKERS' COMPENSATION BOARD
                       ACTION NO. WC-21-01628 & WC-21-01627


CLAS COAL CO., INC.;
HONORABLE TONYA CLEMONS,
ADMINISTRATIVE LAW JUDGE;
TROY STIDHAM; AND WORKERS'
COMPENSATION BOARD                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE: Kentucky Employers' Mutual Insurance ("KEMI")

petitions for review of a Workers' Compensation Board ("Board") opinion

affirming an award of benefits to Troy Stidham ("Stidham") for cumulative

hearing loss. We affirm.

# FACTS

Stidham, a resident of Virginia, was an underground coal miner for many years. Starting in 2003, Stidham worked in Clas Coal mines in Kentucky for about 16 years. He ceased working in Kentucky on January 1, 2020, when Clas Coal shut down its last Kentucky mine.

After the Kentucky mine closed, Stidham worked at a Clas Coal mine in Alabama for several months starting in February 2020. He retired on October 31, 2020. Stidham had the same job duties and was exposed to loud noise at the Clas Coal mines in both Kentucky and Alabama.

Stidham noticed some difficulty hearing people speak for a few years before his retirement. But he did not have his hearing tested or receive treatment for hearing loss while he was employed by Clas Coal. After retiring, Stidham saw audiologist Dr. Robert Manning on August 31, 2021. Dr. Manning took Stidham's history and performed audiology testing. Dr. Manning found Stidham had a type of hearing loss associated with long-term loud noise exposure.

A couple of weeks after being examined by Dr. Manning, Stidham notified Clas Coal that he may have suffered work-related hearing loss. He filed

an application to resolve a workers' compensation claim for hearing loss in November 2021.[1]

Stidham later underwent further audiology testing, including by university medical evaluator Dr. Brittany Brose. Dr. Brose found Stidham had suffered hearing loss due to his long-term work in the mines, resulting in a nine percent (9%) whole person impairment. In her deposition testimony, Dr. Brose stated that the degree of hearing loss sustained by Stidham would not result from working several months in a mine. Instead, she opined that a much longer period of exposure to loud noise was required to produce that degree of hearing loss.

KEMI, the insurance carrier for Clas Coal in Kentucky from 2003 through early February 2020, intervened in Stidham's workers' compensation proceeding. It raised issues about extraterritorial coverage and jurisdiction. KEMI argued that Stidham's hearing loss injury became manifest on either October 31, 2020, when he retired after working in the Alabama mine, or on August 31, 2021, when he was diagnosed with a work-related hearing loss.

The case proceeded to a final evidentiary hearing before an ALJ. The ALJ rendered an Opinion, Award and Order ("ALJ decision") in October 2023.

---

[1] In addition to alleging occupational hearing loss, Stidham also alleged that he suffered coal workers' pneumoconiosis ("CWP"). The administrative law judge ("ALJ") found Stidham failed to meet his burden of proving work-related CWP and dismissed his CWP claim. Stidham did not appeal from the dismissal of his CWP claim.

The ALJ noted the parties stipulated Stidham had provided timely notice of his alleged injuries. The ALJ also noted Stidham consistently asserted the date of the injury was January 1, 2020, and Stidham never amended the injury date to October 31, 2020.

The ALJ also noted KEMI's argument that Kentucky lacked jurisdiction over Stidham's claim because Stidham was last exposed to hazardous workplace noise in Alabama. But after quoting and construing Kentucky workers' compensation statutes about extraterritorial coverage and hearing loss compensability, the ALJ concluded that Kentucky had jurisdiction over Stidham's workers' compensation claim.

Next, the ALJ found Stidham had work-related cumulative hearing loss resulting in a nine percent (9%) whole person impairment based on the opinion of university evaluator Dr. Brose. The ALJ determined Stidham was entitled to income benefits for permanent partial disability and reasonable medical expenses related to the hearing loss.

KEMI filed a petition for reconsideration, which the ALJ denied. The ALJ rejected KEMI's argument that a recent Board opinion (*Holland v. Clas Coal Co., Inc.*, 012723 KYWC, 2021-00424), indicated the ALJ erred in finding a January 1, 2020, injury manifestation date and determining Kentucky had jurisdiction over Stidham's claim. The ALJ noted the claimant in *Holland*

amended his alleged injury date to include time spent working in another state after his last date of employment in Kentucky. In contrast, the ALJ noted Stidham consistently alleged an injury manifestation date of January 1, 2020, and never amended this alleged injury date to include time spent working in Alabama.

The ALJ also noted, in the order denying reconsideration, the parties' stipulations that Stidham worked for Clas Coal for about 16 years in Kentucky but only for about nine months in Alabama. And the ALJ found persuasive Dr. Brose's testimony, which the ALJ construed as indicating that Stidham's exposure to noise in the workplace for several months after January 1, 2020, was "inconsequential to the finding of his pattern of hearing loss and his level of impairment." The ALJ also noted a lack of evidence to contradict her finding that Clas Coal in Kentucky was the last employer with whom Stidham had been injuriously exposed to hazardous noise for at least a year.

KEMI filed an appeal with the Board. The Board noted KEMI's arguments that Stidham was last injuriously exposed to loud noise while working in Alabama and that Kentucky therefore lacked jurisdiction over Stidham's hearing loss claim. The Board also recognized that KEMI again argued that the finding of a January 1, 2020, injury manifestation date was incorrect and should be corrected to October 31, 2020, or August 31, 2021 – outside the dates of KEMI's coverage.

But after explaining why it disagreed with KEMI's arguments, the Board affirmed the ALJ's decision in its Opinion dated April 12, 2024 ("Board opinion").

KEMI filed a petition for review with this Court, raising the same sort of issues it raised to the Board. We discuss further facts as needed in our analysis.

## ANALYSIS

### Standard of Review

When the Court of Appeals reviews a Workers' Compensation Board opinion resolving an appeal of an ALJ decision, this Court should not "correct the Board" unless "the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

### No Reversible Error in Board Affirming ALJ's Conclusions that Extraterritorial Coverage Was Not at Issue and that Kentucky had Jurisdiction

KEMI asserts that issues of jurisdiction should have been resolved before considering issues of compensability. *See Letcher Cnty. Board of Education v. Hall*, 671 S.W.3d 374, 379 (Ky. 2023) ("jurisdiction must exist before an ALJ has authority to decide a workers' compensation claim"). KEMI claims the Board erred in affirming the ALJ's decision because the ALJ, in its view, failed to first

-6-

resolve jurisdictional issues pursuant to KRS[2] 342.670 and improperly interjected compensability issues under KRS 342.7305 in its jurisdictional analysis. We disagree.

KRS 342.670 is labeled "Extraterritorial coverage." It explicitly addresses when claimants working outside Kentucky at the time of injury are entitled to the benefits of KRS Chapter 342 (Kentucky Workers' Compensation) as if they had been injured in Kentucky. KRS 342.7305, on the other hand, addresses the compensability of occupational hearing loss. KRS 342.7305(4) states: "the employer with whom the employee was last injuriously exposed to hazardous noise for a minimum duration of one (1) year of employment shall be exclusively liable for benefits."

After discussing both KRS 342.670 and KRS 342.7305(4), the ALJ ultimately determined that there was no issue of extraterritorial coverage to decide. The ALJ noted Stidham consistently alleged an injury date of January 1, 2020 (coinciding with the end of his working in Kentucky) and never amended the injury date to October 31, 2020, to include his time working in Alabama. And the ALJ determined that Stidham worked for a Kentucky company when his injury manifested so KRS 342.670 did not apply.

---

[2] Kentucky Revised Statutes.

In reviewing the ALJ's decision, the Board noted KEMI's argument that Kentucky lacked jurisdiction over Stidham's claim since Stidham was last exposed to hazardous workplace noise while working in Alabama through October 2020. It also noted KEMI's assertion that the one-year durational requirement in KRS 342.7305 had no effect in determining whether Kentucky had jurisdiction over the claim under KRS 342.670.

The Board acknowledged that remand for further findings would be necessary if Stidham had alleged a later injury date such as October 31, 2020 (the date Stidham retired after working in the Alabama mine for the last several months). However, the Board affirmed the ALJ's exercise of jurisdiction because Stidham never alleged an out-of-state injury, meaning that extraterritorial coverage was not really at issue:

> The Board agrees that the claim would need to be remanded to the ALJ for additional findings if Stidham alleged an injury date of October 2020, when he no longer worked in Kentucky. KEMI cites Amax Coal Co. v. Smith, 748 S.W.2d 158, 160 (Ky. App. 1988) for the proposition that the Court must look to the employee's work status at the time of injury. The one-year requirement in KRS 342.7305(4) is not relevant to the analysis of whether Kentucky would have jurisdiction of this claim if the date of injury alleged occurred in Alabama. However, the claimed hearing loss occurred while Stidham worked in Kentucky.
>
> The ALJ found the extraterritorial coverage statute does not apply to the facts of this claim and there is substantial evidence supporting that finding. The provisions of KRS

-8-

342.670 simply do not apply as there was no hearing loss claim when Stidham worked out-of-state. The claim was pled as an occupational hearing loss claim with a date of occurrence being the last date Stidham worked in Kentucky. There was never an allegation of an out-of-state hearing loss.

(Board opinion, pages 13-14.)

In its petition for review, KEMI asserts the Board erred in affirming the ALJ's determination of jurisdiction, citing precedent including *Hicks v. Kentucky Employers' Mutual Insurance Company*, 686 S.W.3d 215 (Ky. 2024). KEMI points out that *Hicks* became final shortly before the Board rendered its opinion in this case. KEMI argues that *Hicks* shows that Stidham's claim should have been dismissed for lack of jurisdiction. We disagree.

In *Hicks*, the claimant had been working in a West Virginia coal mine for about 17 months when he suffered an acute injury at work. Hicks was a Kentucky resident who had previously worked in Kentucky coal mining for 21 years. His employer was headquartered in Kentucky at the time of his acute work injury and Hicks had traveled to Kentucky occasionally for work purposes during the time he worked at the West Virginia mine. *Id.* at 218. Despite receiving medical and income benefits from his employer's West Virginia carrier, Hicks also filed a Kentucky workers' compensation claim for both acute injuries and for cumulative injuries including cumulative hearing loss. *Id.* at 218-19.

-9-

Ultimately, a Kentucky ALJ awarded Hicks income and medical benefits for injuries to his back and shoulders but only medical benefits for hearing loss.[3] The Board affirmed the ALJ's decision awarding Hicks benefits. But this Court reversed, holding the Board and ALJ misconstrued KRS 342.670 in determining that Hicks' employment was principally localized in Kentucky rather than West Virginia. *Id*. at 219.

Our Supreme Court affirmed the Court of Appeals' reversal of the Board opinion in *Hicks*, identifying the dispositive issue as being the question of where Hicks' employment was localized. *Id*. at 221. However, unlike the present case, the parties in *Hicks* agreed that the claimant was injured while working in a state other than Kentucky. *See id*. ("The parties agree Hicks was injured while working in West Virginia.").

Furthermore, unlike the solely cumulative injuries alleged here (including cumulative hearing loss), *Hicks* involved allegations of an acute injury. *See id*. at 218 ("On the date of his injury, Hicks was in the Alma Mine when he noticed a miner cable hung across a belt line. While he was attempting to remove the cable, a splice in the conveyor belt caught his jacket and pulled him down the belt line, causing injuries to his right shoulder and neck. He did not return to work

---

[3] Apparently, Hicks' hearing loss did not meet the eight percent (8%) whole person impairment threshold for awarding income benefits. *See* KRS 342.7305(2).

-10-

following the injury."). Alleged cumulative injuries (including hearing loss) were also briefly noted in *Hicks*, but not discussed in as much depth as the acute injury.

In contrast to Hicks, Stidham alleged no acute injuries occurring in the workplace – only cumulative-type injuries including hearing loss from repeated exposure to loud noise in the workplace. And unlike Hicks, who alleged an injury date of January 2019 (when he was working in West Virginia), *see id.*, Stidham alleged an injury date (January 1, 2020) before he went to work in another state.

Because Stidham did not file a claim for an alleged injury occurring while he was working outside Kentucky, his case is factually distinct from *Hicks* and KRS 342.670's extraterritorial coverage provisions do not apply. So, we need not reach whether Stidham's employment was principally localized in Kentucky because liability for an alleged injury occurring outside Kentucky is not at issue – unlike in *Hicks*. And we do not accept KEMI's argument that *Hicks* calls for reversing the Board's decision affirming based on lack of jurisdiction.

Nor do we accept KEMI's arguments that the Board and ALJ erred in not finding a lack of Kentucky jurisdiction based on this Court's precedent in *Amax Coal Co. v. Smith*, 748 S.W.2d 158 (Ky. App. 1988), and *Eck Miller Transp. Corp. v. Wagers*, 833 S.W.2d 854 (Ky. App. 1992). Citing *Amax*, 748 S.W.2d at 160, KEMI claims the Board erred in accepting the ALJ's finding of a January 1, 2020, date of injury despite Stidham's being exposed to loud noise during his

working in the Alabama mine through October 2020.  It argues that Stidham's last day of work in Kentucky was not dispositive; instead, the date of last exposure must be analyzed for purposes of jurisdiction pursuant to *Amax*.

In *Amax*, the claimant filed a workers' compensation claim in Kentucky for CWP after working in an Indiana mine for three or four years.  The claimant (Smith) had previously worked for many years in Kentucky coal mines and was legally domiciled in Kentucky while working in Indiana.  The Board (which made the initial decisions in workers' compensation cases at that time) awarded the claimant Kentucky workers' compensation benefits for CWP and the circuit court affirmed the Board's decision.  *Id.* at 159.

The Board determined that claimant Smith's employment was principally localized in Kentucky based on his long history of having previously worked for the same employer in Kentucky.  And it determined extraterritorial coverage was appropriate under KRS 342.670.  *Id.* at 160.  But this Court reversed, finding the Board's reasoning faulty and noting that KRS 342.670 explicitly calls for consideration of circumstances of employment **at the time of injury** and rejecting any assertion that Kentucky should exercise jurisdiction based solely on prior exposure to coal dust in Kentucky:

> the language of the statutes is expressed in the present tense.  KRS 342.670(1) refers to the nature and location and the work "at the time of such injury."  Subsection (1)(a) reads "[h]is employment *is* principally localized in

-12-

this state." (Emphasis added.) Subsection (4)(d)(2) provides that a person's employment is principally localized in this state when "he *is* domiciled and *spends* a substantial part of his working time in the service of his employer in this . . . state."

Smith worked exclusively in Indiana after December 1979. His claim was not filed until 1985. We find no such words as "was" or "did" in the statute. We are concerned with where he was at the time of the injury. His employment is principally localized where he *spends* a substantial part of his working time in the service of his employer in this state. The key word is "spends." It does not read "spent" or "did spend."

It may be that Smith's pneumoconiosis was caused by all of his exposure to coal dust and that he sustained many "injuries" while breathing Kentucky coal dust, and coal dust in other states, but we can only conclude that the last injurious exposures were clearly received in Indiana. The disabling effects of the disease did not become disabling until several years after Smith received additional continuous exposure in Indiana. Furthermore, if his claim is to be based on any "injuries" in Kentucky, we would not be attempting to apply Kentucky's extraterritorial coverage. For Kentucky's extraterritorial coverage law to apply to an injury, the injury must occur outside of Kentucky to a Kentucky resident who principally works in Kentucky at the time of the "injury." The exposure and injury did occur outside of Kentucky in Indiana, and we cannot use the previous Kentucky exposure when applying the extraterritorial statute.

. . .

Smith was hired by Amax under an Indiana contract. He worked for an Indiana employer, and for his last working years, his work was totally and exclusively localized in Indiana. His claim for compensation should be made in Indiana, not in Kentucky.

-13-

*Id.*

Citing *Amax*, KEMI asserts the Board erred in accepting the finding of a January 1, 2020, injury date since Stidham was last exposed to hazardous workplace noise in Alabama. It contends Stidham's employment was principally localized in Alabama and that Kentucky had no jurisdiction over his claim.

In response, Stidham asserts *Amax* is distinguishable due to a lack of evidence in *Amax* that the injury occurred in Kentucky. Certainly, our opinion in *Amax* does not discuss any evidence showing Smith's CWP manifested before the Kentucky mine closed and Smith began working in Indiana. And we stated that Smith suffered the disabling effects of CWP only after having worked for years in Indiana with continuous exposure to coal dust. *Id.*

In contrast, despite continuing exposure to loud noise at the Alabama plant for several months ending in October 2020, Stidham offered evidence to support a finding of disabling effects before he ceased working in Kentucky and went to work in Alabama. For example, Stidham testified he had trouble hearing people for years before he went to work in Alabama. Dr. Brose testified that Stidham's hearing loss had been caused by many years of exposure to loud noise, and that several months' exposure to loud noise was not sufficient to cause the degree of hearing loss he suffered.

-14-

Given these substantial factual distinctions, we do not construe *Amax* as requiring reversal to dismiss for lack of jurisdiction given the alleged injury date and the evidence supporting a finding that injury occurred as of January 1, 2020.

Similarly, despite KEMI's arguments to the contrary, reversal for lack of jurisdiction is not required under *Wagers*, 833 S.W.2d at 854. *Wagers* involved a truck driver who lived in Kentucky and completed some work tasks in Kentucky but who received assignments and "made his hauls" from a Tennessee terminal. *Id.* at 855. Wagers was injured while working in Tennessee when he was forced to leap from his truck after it caught fire. *Id.*

The ALJ determined Wagers' employment was not principally localized in Kentucky and thus concluded Kentucky lacked jurisdiction over his workers' compensation claim. *Id.* at 856. The Board reversed the ALJ, finding the evidence compelled a finding that Wagers' employment was principally localized in Kentucky – especially based on evidence of contracting, Wagers' performing some work in Kentucky, and Wagers' residing in Kentucky. *Id.* at 857.

This Court reversed the Board in *Wagers*, reinstating the ALJ's determination that Kentucky lacked jurisdiction over the claim. Noting Wagers had the burden of proving the facts to establish Kentucky's jurisdiction, this Court perceived that the ALJ's findings were supported by substantial evidence. And we further perceived the ALJ properly applied KRS 342.670 in determining that

Wagers' employment was principally localized in Tennessee rather than Kentucky – especially considering that Wagers received all work assignments in Tennessee and was injured while working in Tennessee. In contrast, in our estimation, the Board improperly focused on evidence of contracting and domicile in *Wagers*, when it should have focused solely on determining the state where the employer had a place of business and whether the claimant regularly worked from that place of business. *Id. See also* KRS 342.670(5)(d)(1)-(2).[4] Despite KEMI's argument that *Wagers* also demands reversal for lack of jurisdiction, *Wagers* is also factually distinct since the claimant suffered an acute injury in another state.

In sum, we reject KEMI's arguments that the aforementioned precedent calls for reversal and dismissal of this case for lack of jurisdiction.

**No Reversible Error in Board Accepting ALJ's Finding a Manifestation Date of January 1, 2020**

KEMI notes it would not be the carrier at risk if the manifestation date of Stidham's injury were October 31, 2020. It contends the Board erred in affirming the ALJ's finding of a manifestation date of January 1, 2020, and asserts that Kentucky law does not allow for flexibility in selecting an injury date.

---

[4] *Wagers* (rendered in 1992) discusses the then-applicable version of KRS 342.670. *Wagers* cites to KRS 342.670(4)(d) in discussing where the employment was principally localized. *See* 833 S.W.2d at 857-58. Statutory provisions about determining where one's employment is principally localized have remained substantially the same but have been renumbered to KRS 342.670(5)(d) in recent versions of KRS 342.670 following statutory amendments.

KEMI argues Stidham's allegation of an injury date of January 1, 2020, in pleadings is not controlling because allegations and pleadings are not evidence. *See, e.g.*, *T.C. v. M.E.*, 603 S.W.3d 663, 684 (Ky. App. 2020). Yet while a mere allegation of an injury date is not controlling, Stidham presented evidence which supported the ALJ's finding of an injury date of January 1, 2020, as we previously discussed.

KEMI also argues that Stidham's last day of work in Kentucky should not control the date of manifestation. Instead, it asserts that the date of last injurious exposure should control. And it points out that Stidham admitted to being exposed to hazardous noise while working in the Alabama mine. KEMI also quotes *Hale v. CDR Operations, Inc.*, 474 S.W.3d 129, 138 (Ky. 2015): "In hearing loss and occupational disease claims – which are quite similar in nature to cumulative trauma because they occur gradually over time – the employer at the time of the last injurious or hazardous exposure is liable."

But KEMI fails to acknowledge that *Hale* simply applied the plain language of a prior, then-applicable version of KRS 342.7305(4), which stated: "the employer with whom the employee was last injuriously exposed to hazardous noise shall be exclusively liable for benefits." *See id*. at 138 n.9. As the Board's opinion in this case points out, after *Hale* was rendered, KRS 342.7305(4) was amended in 2018 to add a one-year durational requirement for employer liability

for cumulative hearing loss.  The current version of KRS 342.7305(4) now states: "the employer with whom the employee was last injuriously exposed to hazardous noise **for a minimum duration of one (1) year of employment** shall be exclusively liable for benefits." (Emphasis added.)

The Board discussed in its opinion how prior to this 2018 amendment, employers argued it was unfair to hold them solely liable for cumulative hearing loss injuries for recently hired employees.  And the Board expressed concern that after the 2018 amendment to KRS 342.7305(4), employers could avoid liability for long-term employees' cumulative hearing loss claims by transferring employees to work for them in another state for durations of under one year.  Noting the stipulations that Stidham worked for Clas for about 16 years in Kentucky and then for several months in Alabama, the Board stated:

> Therefore, any other employer that Stidham would have begun employment with in 2020 could not be held liable for hearing loss since he retired within one year.  The fact that Stidham remained employed by Clas, a Virginia company no longer principally localized in Kentucky, does not shield them from liability, as Stidham had a compensable claim when he last worked in Kentucky.

(Board opinion, page 18.)

The Board further noted Dr. Brose's testimony indicating Stidham's hearing loss arose over many years rather than several months and the ALJ's interpretation of this testimony as indicating the several months Stidham worked in

-18-

Alabama were "inconsequential to his pattern of hearing loss and his level of impairment." (Board opinion, page 19.)  The Board acknowledged the ALJ had the authority to make reasonable inferences from the evidence and declined to second-guess the ALJ's assessment of the weight and credibility of the evidence.  It stated: "Relying on Stidham's testimony and Dr. Brose's opinion, the ALJ was entitled to reach the reasonable inference that as of January 1, 2020, the hearing loss is compensable. No physician has stated the short duration of work in Alabama caused a worsening of his condition." (Board opinion, pages 19-20.)

Furthermore, as the Board noted, manifestation may mean different things in different contexts.  For example, for purposes of addressing issues about notice or the statute of limitations, manifestation occurs on the date a doctor diagnosed the claimant and told him/her the injury was work-related.  On the other hand, the date of manifestation can mean the date when symptoms start or a disability arises for purposes of determining an initial liability date for an injury. *Ford Motor Company v. Duckworth*, 615 S.W.3d 26, 30 (Ky. 2021).

As Stidham points out, substantial evidence supports the ALJ's finding that Stidham suffered symptoms or disability as of January 1, 2020, when he last worked in Kentucky.  And KEMI does not point to any evidence that Stidham's exposure to noise at work did not cause symptoms or result in disability prior to October 31, 2020, when Stidham retired, or prior to August 31, 2021, when

-19-

Stidham first received a doctor's diagnosis of work-related hearing loss. In short, we discern no reversible error in the Board's affirming the ALJ's determination that the hearing loss injury manifested in the sense of causing symptoms or disability as of January 1, 2020.

**Given 2018 Amendments to KRS 342.7305(4), No Reversible Error in Board's Affirming the ALJ's Decision Despite KEMI's Assertion that Stidham Was Injuriously Exposed to Noise in Alabama**

Next, KEMI asserts that Stidham was injuriously exposed to loud noise in the Alabama mine so there is no jurisdiction to resolve his hearing loss claim in Kentucky – despite Stidham's working in Alabama less than a year.[5]

KEMI points out that KRS 342.0011(4) defines *injurious exposure* as "exposure to occupational hazard which would, independently of any other cause whatsoever, produce or cause the disease for which the claim is made[.]" *See also Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 271 (Ky. 2018) (in workers' compensation case involving allegations that exposure to a carcinogen in the workplace caused claimant's cancer, construing KRS 342.0011(4) and stating:

---

[5] KEMI points to Stidham's testimony admitting that he was exposed to the same kind of noise hazards in the Alabama mine as in the Kentucky mine. However, the ALJ did not make an explicit finding that Stidham was injuriously exposed to noise in the Alabama mine. Instead, applying KRS 342.7305(4) as amended effective mid-July 2018, the ALJ simply found that Stidham was last injuriously exposed to noise for at least one year while he was working for Clas in Kentucky ending January 1, 2020. The ALJ also construed Dr. Brose's testimony as indicating that the several months of noise exposure in the Alabama mine was not a significant factor in causing Stidham's cumulative hearing loss, thus perhaps implicitly suggesting the noise exposure in the Alabama mine was not an injurious exposure.

"We have held the statute requires only that exposure could independently cause the disease – not that it did in fact cause the disease.").

KEMI also alludes to Kentucky precedent indicating that a finding of injurious exposure does not require a finding of a measurable hearing loss, but instead simply the kind of exposure to hazardous noise which would result in hearing loss if continued indefinitely. *See Greg's Const. v. Keeton*, 385 S.W.3d 420, 425 (Ky. 2012). But KEMI fails to recognize that *Keeton* applied a prior version of KRS 342.7305(4), which at that time did not make "an employer's liability contingent on a minimum period of exposure[.]" 385 S.W.3d at 425. Applying the plain language of the then-effective version of KRS 342.7305(4) in *Keeton* and not creating a court-made rule, the Court stated:

> KRS 342.7305(4) is unambiguous with respect to liability for noise-induced hearing loss. The statute imposes liability "exclusively" on the employer with whom the employee was last injuriously exposed to hazardous noise. We presume that the legislature intended to say what it said.

*Id.* at 426.

As the Board pointed out, following the rendition of *Keeton* and similar precedent applying the plain language of a prior version of KRS 342.7305(4),[6] the legislature amended KRS 342.7305(4) effective mid-July 2018.

---

[6] *See also D&L Mining v. Hensley*, 659 S.W.3d 752, 756 (Ky. App. 2018) ("KRS 342.7305(4) imposes liability 'exclusively' on the employer with whom the claimant was last injuriously

-21-

Since mid-July 2018, KRS 342.7305(4) has stated: "the employer with whom the employee was last injuriously exposed to hazardous noise **for a minimum duration of one (1) year** of employment shall be exclusively liable for benefits." (Emphasis added.)

To our knowledge, as of September 2024, our Supreme Court has not addressed whether the rule stated in *Keeton* – *i.e.*, that the employer with whom the employee was last injuriously exposed to hazardous workplace noise is exclusively liable for cumulative hearing loss – still applies after the 2018 amendment to KRS 342.7305(4) added a one-year minimum duration requirement.[7] But again, our Supreme Court made clear that it was simply applying the plain language of the then-effective version of KRS 342.7305(4) in *Keeton*. So, following its lead in *Keeton*, "we presume that the legislature intended to say what it said" in the plain

---

exposed to hazardous noise, preventing apportionment to prior employers. The plain language of this statute is unambiguous with respect to liability for noise-induced hearing loss attributable to the workplace."). *Hensley* was rendered March 30, 2018 – a few months before KRS 342.7305(4) was amended effective mid-July 2018.

[7] This Court recently quoted the current version of KRS 342.7305(4) (as amended mid-July 2018) and concluded: "the plain language of KRS 342.7305(4) meant that Muhlenberg Coal cannot be responsible for Wilder's hearing loss since he worked for Muhlenberg Coal for less than a year." *Wilder v. Muhlenberg Cnty. Coal Co.*, No. 2021-CA-1499-WC, 2022 WL 2375740, at *1-2 (Ky. App. Jul. 1, 2022) (unpublished). We recognize that this unpublished Kentucky appellate court opinion is not binding. Rules of Appellate Procedure ("RAP") 41(A). And this Court did not specifically discuss prior precedent applying the plain language of the prior version of KRS 342.7305(4) in *Wilder*. Nonetheless, *Wilder* is consistent with precedent holding that courts must apply the plain language of a statute when statutory language is clear. *See, e.g.*, *Travelers Indemnity Company v. Armstrong*, 565 S.W.3d 550, 558 (Ky. 2018).

and clear language of KRS 342.7305(4) as amended in mid-July 2018.  *See*

*Keeton*, 385 S.W.3d at 426.

In essence, prior precedent recognizing that the employer with whom

the claimant is last exposed to hazardous workplace noise is exclusively liable for

benefits, without a minimum durational requirement, under the plain language of a

prior, then-effective version of KRS 342.7305(4) does not apply to claims

governed by the current version of KRS 342.7305(4).[8]  Instead, regardless of

whether Stidham's exposure to hazardous noise in the Alabama mine for several

months but less than a year was injurious, the employer with whom the claimant

was last injuriously exposed to hazardous noise **for at least one year** bears sole

liability for a cumulative hearing loss claim under the current version of KRS

342.7305(4).

### Fact that Stidham was Not Diagnosed with Work-Related Hearing Loss Until After His Stint Working in Alabama Does Not Mean That His Injury Had Not Become Manifest for Liability Purposes by the End of his Working at Clas Coal's Kentucky Mine

KEMI points to the August 31, 2021, date of Stidham's diagnosis of

work-related hearing loss – a year and a half after he ceased working in the

---

[8] We do not and cannot overrule Kentucky Supreme Court precedent such as *Keeton*, 385 S.W.3d 420.  *See* Rules of the Supreme Court ("SCR") 1.030(8)(a) ("The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court.").  However, the mid-2018 amendment to KRS 342.7405(4), which added a one-year duration requirement for an employer to be held solely liable for a claimant's cumulative hearing loss injury, limits the applicability of precedent following the plain language of the prior version of this statute – which lacked any duration requirement.

Kentucky mine. It again argues that the ALJ's finding of an injury manifestation date of January 1, 2020, is incorrect. Instead, it asserts a correct manifestation date would be either October 31, 2020 (when Stidham retired) or August 31, 2021 (when his work-related hearing loss was diagnosed) – so that KEMI would not be the carrier at risk.

In support, KEMI cites authority indicating that a cumulative injury becomes manifest as of the date that the worker discovers he/she has sustained an injury and knows it is caused by work. *See Alcan Foil Products, a Div. of Alcan Aluminum Corp. v. Huff*, 2 S.W.3d 96, 101 (Ky. 1999). It also cites authority recognizing that workers are not required to diagnose themselves, and that physicians must diagnose an injury and its work-relatedness for a cumulative injury to become manifest. *See American Printing House for the Blind ex rel. Mutual Ins. Corp. of America v. Brown*, 142 S.W.3d 145, 148-49 (Ky. 2004) (citing *Hill v. Sextet Min. Corp.*, 65 S.W.3d 503 (Ky. 2001)). However, KEMI fails to recognize that these cases discuss manifestation of cumulative injuries for purposes of notice and statute of limitations – not manifestation dates for purposes of determining when liability arises (which depends on evidence of symptoms and disabling effects). *See Duckworth*, 615 S.W.3d at 30.

Again, there is substantial evidence to support the ALJ's finding that an injury became manifest as of January 1, 2020, for liability purposes (meaning

symptoms or disabling effects had arisen as of that date), despite the August 31, 2021 diagnosis of a work-related hearing loss indicating that the period for giving notice or filing a claim did not begin to run before August 31, 2021.

**No Reversible Error in Board's Considering Some Precedent More Analogous to Instant Case than Other Precedent**

KEMI contends the Board erroneously discounted *Amax,* 748 S.W.2d 158, and held *Coal Dust Coal Co. v. Stiltner*, 905 S.W.2d 859 (Ky. 1995), to be controlling. KEMI points out that *Stiltner* involved a CWP claim rather than a hearing loss claim – but so did *Amax*. KEMI also points out that the claimant in *Stiltner* had been diagnosed with CWP before any further exposure to similar environmental hazards in Virginia – unlike the lack of formal diagnosis of hearing loss here before Stidham went to work in Alabama. KEMI also points out that there was no connection between Stiltner's Kentucky employer and his out-of-state employer – unlike Stidham continuing to work for Clas Coal in a different state. But despite these factual differences, we discern no reversible error in the Board's considering *Stiltner* more analogous to instant case than *Amax*.

The Board identified the relevant issue in *Stiltner* (as here) to be whether the claimant suffered a compensable injury while working in Kentucky – not whether to award benefits for injuries which occurred in another state (extraterritorial coverage). And the Board concluded:

In Stiltner, as in the case sub judice, there was no evidence to indicate extraterritorial jurisdiction to impose liability upon the foreign employer. The question becomes whether Stidham had a viable hearing loss claim on the date he last worked in Kentucky. It is undisputed the overwhelming majority of Stidham's work where he was repetitively exposed to loud noise occurred in Kentucky compared to minimal exposure in Alabama.

(Board opinion, page 20.)

The Board further stated: "The ALJ found that Stidham had a compensable hearing loss claim when he last worked in Kentucky and substantial evidence supports that finding." (Board opinion, page 21.)

As the Board noted, the court in *Stiltner* discussed how injurious exposure for two years or more was then required under applicable statutes to hold an employer liable for paying CWP benefits. *Stiltner*, 905 S.W.2d at 860. Similarly, KRS 342.7305(4) (as amended mid-July 2018) requires at least one year of injurious exposure to hazardous noise for the employer to be held liable for cumulative hearing loss. We discern no reversible error in the Board's considering *Stiltner* more analogous to this case than *Amax* since extraterritorial coverage was not really at issue and there was evidence of a compensable injury occurring in Kentucky before Stiltner went to work in another state.

In sum, we do not perceive that the Board overlooked or misconstrued controlling statutes or precedent or that it flagrantly erred in its assessment of the

evidence resulting in gross injustice.  *See Kelly*, 827 S.W.2d at 687-88.  Thus, we affirm its opinion affirming the ALJ's decision.

## CONCLUSION

For the foregoing reasons, we AFFIRM.

ALL CONCUR.

BRIEF FOR APPELLANT:

W. Barry Lewis
Hazard, Kentucky

BRIEF FOR APPELLEE TROY
STIDHAM:

Ronnie M. Slone
Prestonsburg, Kentucky